UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

FILED

OCT 2 7 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

GARRETT QUIGLEY )
    Plaintiff, )
 )
v. )
 )
 )
UNITED STATES OF AMERICA )
    Defendant )
 )

CASE No.: 2:14cv546

**IN ADMIRALTY**

Serve:

    **The Honorable Eric Holder**
    **United States Attorney General**
    **U.S Department of Justice**
    **950 Pennsylvania Avenue, N.W.**
    **Washington, D.C. 20530-001**

    **Neil H. MacBride**
    **Office of the United States Attorney**
    **For the Eastern District of Virginia**
    **2100 Jamieson Avenue**
    **Alexandria, VA. 22314**

### COMPLAINT IN ADMIRALTY

COMES NOW the Plaintiff complaining of personal injuries sustained by him as a result of the negligence of the officers and crew of the USS BONHOMME RICHARD while at anchor in or near HONG KONG, and in support thereof states as follows:

### JURISDICTION, VENUE AND PARTIES

1) This action arises under and is brought pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 741-752 et. seq., the Public Vessels Act, 46 U.S.C. §781-790 et. seq. and General Maritime Law, 28 U.S.C. §1333. This is a case of admiralty and maritime jurisdiction.

2) The Plaintiff Garrett Quigley is a citizen of Ireland and resident of Hong Kong.

3) The acts complained of herein occurred upon navigable waters and involve activity which bears a significant relationship to traditional maritime activity as embarking and disembarking a vessel on navigable waters, such as this, is a traditional maritime activity.

4) The vessel involved in this matter, the USS BONHOMME RICHARD, was, at all times relevant herein, a United States Naval Warship located at anchor in Hong Kong harbor.

5) The Defendant United States of America is a sovereign and at all times material hereto, has acted through its agency, the United States Navy, within the Department of Defense.

6) This is an admiralty or maritime claim for purposes of F.R.C.P. 9(h), 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## FACTUAL ALLEGATIONS

7) On or about October 18, 2012, Mr. Quigley received an invitation from the US Consulate in Hong Kong to visit and tour the USS BONHOMME RICHARD (LHD 6).

8) On or about the October 29, 2012, Mr. Quigley and his wife took the water taxi from the US Navy area at Fenwick Pier in Hong Kong out to the vessel.

9) On October 29, 2012, sunset was approximately 5:30pm.

10) By the time the visitors arrived at the pontoon dock next to the warship at about 6:25pm, it was completely dark.

11) The weather conditions were wet and stormy and the sea was very choppy, causing the pontoon to rock and move with great force and angle.

12) There were also two other boats that were carrying approximately another 100 visitors.

13) Another water taxi had discharged its passengers before Mr. Quigley arrived and attempted to moor to the pontoon beside the BONHOMME RICHARD.

14) Consequently, when the water taxi tried to moor next to the pontoon, there was very little room on the platform of the pontoon for the disembarking passengers to stand awaiting permission to board the USS BONHOMME RICHARD.

15) The pontoon itself, moored beside and tied off to the USS BONHOMME RICHARD, was a floating platform with a surface that appeared to be concrete.

16) By information and belief, the US Navy, through a locally obtained husbanding agent, requested the platform for ingress and egress to and from the warship.

17) Leading from the platform up into the side of the ship was a metal staircase that was at least thirty (30) feet high.

18) The staircase was on heavy rollers in contact with the concrete deck.

19) On information and belief, the purpose of the rollers were to allow the brow to move with the motion of the pontoon as it moved with the sea, allowing the brow itself to stay in place relative to the Quarterdeck of the vessel.

20) The Plaintiff, his wife and a number of people, stood in turn waiting to go up the metal staircase.

21) While there may have been some naval personnel on the platform, there was no one guiding visitors up the stairs when Mr. Quigley was waiting for his turn to board.

22) There were no warnings given that the stairs were dangerous or that they could move, and the US Navy officers and sailors ignored the risk to the passengers by allowing them to stand dangerously close to the rollers.

23) Additionally, there was no railing or protection to keep visitors from moving their feet under the rollers.

24) Due to the crowded conditions on the pontoon, the officers and crew of the USS BONHOMME RICHARD required the visitors to line up in such a manner that required them to stand with their feet near the rollers.

25) As Quigley stood waiting for his turn to board, the pontoon moved due to the heavy sea conditions, causing the rollers to move violently onto Mr. Quigley's foot, crushing it underneath the rollers.

26) Because of the lack of Navy personnel on the platform below the vessel, Quigley was forced to wait a period of time until the staircase rolled off his foot in the other direction.

27) Given the weight of the staircase (including the people already standing on it), and notwithstanding the stormy conditions, Mr. Quigley could hear the bones in his foot being broken, shattered, and crushed while he waited helplessly and in agony for the staircase to move back again.

28) By this time, the water taxi had departed and Mr. Quigley was forced to struggle up the stairs on one leg. As he struggled up the metal stairs after his foot was crushed, Mr. Quigley was in excruciating pain. By the time the medical officer arrived, all he wanted to do was lie down due to the nausea and pain.

29) The medical officer and several others assisted him in hopping and struggling on one leg to the medical department.

30) At the medical department, Mr. Quigley was laid down and examined by US Navy Medical personnel.

31) Following the incident, Mr. Quigley was x-rayed on the ship and the doctor advised that there were broken bones and that Quigley would have to go to a hospital. Mr. Quigley received a pain killing injection and a pain killing tablet from the medical personnel and his foot was put in a form of cast.

32) Mr. Quigley was then forced to climb back down the metal stairs himself, as the US Navy did not offer any aid to exit the vessel. He then had to stand on the pontoon and board a water taxi in order to make his way back to the pier. Given the extent of his injuries and the adverse weather conditions this was an extremely difficult and dangerous exercise.

33) Because of the extent of Quigley's injuries, he was in excruciating pain and received very little care and attention from the crew.

34) Once ashore and with the help of other passengers, and no assistance from naval personnel, Mr. Quigley and his wife managed to hail a taxi and went to the Adventist Hospital in Hong Kong. Mr. Quigley was examined at the hospital by a surgeon where the extent of his injuries was confirmed. Mr. Quigley was informed that he would need to remain in hospital and be operated on.

35) Mr. Quigley's right hallux and second metatarsal shaft on his right foot had been fractured. Mr. Quigley received a compact foot plate, along with six (6) screws.

36) Mr. Quigley was operated on, on or about October 30, 2012.

37) While in the hospital recovering, Mr. Quigley learned of another gentleman being operated on. This gentleman having suffered a similar serious injury from a similar incident while waiting to board the USS BONHOMME RICHARD the date after Mr. Quigley suffered his injuries.

38) Mr. Quigley now has a metal plate and six screws permanently in his foot and continues to experience pain, discomfort, and suffering from his injuries

39) The laws of Ireland allow for a United States citizen to bring the same lawsuit against Ireland under similar circumstances.

## COUNT I
## GENERAL NEGLIGENCE

40) Paragraphs one (1) through thirty five (39) above are incorporated as if fully set forth herein.

41) The officers and crew of the USS BONHOMME RICHARD owed embarking and disembarking passengers, such as Quigley, a duty of due care to keep the pontoon and the steel ladder free from hazards; to direct embarking and disembarking passengers away from open and obvious hazards and dangers such as the steel ladder and pontoon on which they were standing; and to warn embarking and disembarking passengers of the dangers of the rollers and the movement of the pontoon causing them to roll on their feet.

42) The Commanding Officer, the officers, and crew breached their duty to Quigley by failing to put up any warning signs about the rollers, by failing to direct embarking and disembarking passengers away from the rollers; and by failing to warn embarking and disembarking passengers of the dangers and hazards the rollers presented as a result of the heavy seas,

43) As a direct and proximate result of the breach of their duty to Quigley by the Commanding Officer, the officers, and crew of the US Naval warship, Mr. Quigley suffered extensive damage to his foot, necessitating surgical intervention and permanent and lasting loss of function and pain. Mr. Quigley now has a metal plate and six screws

permanently in his foot and, continues to experience pain, discomfort and suffering from his injuries.

44) As a consequence of the foregoing, the United States, if a private person, would be liable to the Plaintiff herein.

WHEREFORE the Plaintiff demands judgment against the Defendant in such sums as will fully, fairly, and justly compensate Plaintiffs.

WHEREFORE, the Plaintiff pray:

1. That Plaintiff Garrett Quigley have and recover of the Defendant compensatory damages in sums in excess of FIVE HUNDRED THOUSAND Dollars ($500,000.00);

2. That the Plaintiff has such other and further relief as the Court deems just and proper.

GARRETT QUIGLEY

By

Of counsel

J. Thompson Cravens (VSB #27559)
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile

J. Thompson Cravens (VSB #27559)
Cravens & Noll, P.C.
9011 Arboretum Parkway
Suite 200
Richmond, Virginia 23236
(804) 330-9220
(804) 330-9458 Facsimile
joe@cravensnoll.com
David P. Morgan
Macari Russotto Spencer & Balaban, P.C.
1 Park West Circle
Suite 101
Midlothian, Virginia 23114
(804) 307-6584
(757) 299-2604
davidm@mrslawfirm.com